IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAWRENCE COHN, Individually and on Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>      vs.<br><br>HAWAIIAN ELECTRIC INDUSTRIES, INC., NEXTERA ENERGY, INC., NEE ACQUISITION SUB II, INC., NEE ACQUISITION SUB I, LLC, PEGGY Y. FOWLER, KEITH P. RUSSELL, BARRY K. TANIGUCHI, CONSTANCE H. LAU, A. MAURICE MYERS, JAMES K. SCOTT, ADMIRAL THOMAS B. FARGO, KEVIN H. TAKETA, AND JEFFREY N. WATANABE,<br><br>                 Defendants. | No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Lawrence Cohn, by his attorneys, alleges upon personal knowledge as to their own acts and upon information and belief premised on the investigation of his counsel as to all other matters, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this action individually and as a class action against Hawaiian Electric Industries, Inc. ("HEI" or the "Company"), members of the HEI Board of Directors (the "Board" or the "Individual Defendants"), NextEra Energy, Inc. ("NextEra"), and two affiliates of NextEra named NEE Acquisition Sub II, Inc. ("Merger Sub I) and NEE Acquisition Sub I, LLC ("Merger Sub II") arising out of their violation of §§14 (a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and Securities Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, for the dissemination of a false and misleading proxy statement contained within the Form S-4, filed by NextEra with the SEC on January 8, 2015 (the "S-4"), in connection with the proposed sale of HEI to NextEra.  Furthermore, Plaintiff alleges violations of state law against the Defendants (defined herein) arising out of breaches of fiduciary duties in connection with the Proposed Transaction.

2.     On or about December 3, 2014, HEI and NextEra jointly issued a press release announcing that they had signed a definitive agreement and plan of merger

("Merger Agreement") pursuant to which HEI shareholders will receive a purported value of approximately $33.50 per HEI share (the "Offer Price"), consisting of: (a) 0.2413 shares of NextEra common stock for each HEI share owned (the "Fixed Exchange Ratio") valued at approximately $25; (b) a one-time dividend payment of $0.50 per share to be paid by HEI for shareholders of record immediately prior to the closing of the Proposed Transaction (the "Dividend Payment"); and (c) shares of an entity called ASB Hawaii, parent company of HEI asset American Savings Bank, F.S.B. ("ASB"), which is to be 'spun-off' to HEI shareholders pursuant to the Proposed Transaction (the "ASB Hawaii Spin-off"). In addition, NextEra is anticipated to assume certain tax liabilities associated with the ASB Hawaii Spin-off, purportedly worth $1.60 per HEI share to HEI shareholders (the "Tax Assumption"). The Proposed Transaction, assuming $1.7 billion of HEI debt and excluding ASB, is valued at approximately $4.3 billion.

3.    The Proposed Transaction is the product of a flawed process designed to tilt the sale of the Company in favor of NextEra at the expense of other bidders and without the benefit of a proper auction process designed to drive up the sales price. The Offer Price undervalues HEI, given HEI's assets and operations, and also because the Proposed Transaction represents a change in corporate control for which the Company's public stockholders are entitled to a significant premium.

4.    Rather than undertake a full and fair auction to maximize stockholder

value as their fiduciary duties require, the Individual Defendants agreed to a number of strict deal protection devices in the Merger Agreement. Those deal protection devices will preclude a fair sales process for the Company and lock out competing bidders, and include: (i) a "no-solicitation" clause that severely limits the Board's ability to communicate and negotiate with potential third parties who wish to submit a bid or who have submitted an unsolicited bid; (ii) an "alternative takeover proposal" provision requiring the Company to disclose to NextEra, within forty-eight hours, all confidential information regarding any alternative proposal it may receive, including the identity of the bidder; (iii) a "matching rights" provision granting NextEra four business days to match any competing proposal made to the Company (making it much less likely that a third party will submit a bid knowing that NextEra need only match it); and (iv) a termination fee provision requiring the Company to pay NextEra a fee of $90 million plus NextEra's expenses up to $40 million if the Proposed Transaction is terminated in favor of a superior proposal under specified terms. These preclusive deal protection devices make it extremely unlikely that another bidder will emerge that is willing to take on the significant time and expense required to engage in the sales process.

5. In an attempt to secure stockholder support for the Proposed Transaction, on January 8, 2015, NextEra and HEI caused to be filed with the SEC a registration statement and joint proxy statement on Form S-4 (the "S-4") that

purports to inform shareholders about the Proposed Transaction but that omits and/or misrepresents material information concerning the Proposed Transaction, including, *inter alia*: (i) the sales process for the Company; (ii) the conflicts of interest that afflicted the sales process; and (iii) the data and inputs that purport to support the financial analysis underlying the so-called "fairness opinions" issued by HEI's financial advisor. The S-4 further revealed a sales process tilted in favor of HEI. Accurate information in the S-4 is critical to the Company's stockholders – not least because the Board undertook a flawed sales process that failed to develop a reliable market price for the sale of the Company. As such, Defendants' actions threaten stockholders with irreparable harm for which money damages are not an adequate alternate remedy.

6. Acting on their own self-interest, Defendants utilized a defective sales process which was not designed to maximize shareholder value or protect the interests of HEI shareholders, but rather was designed to divert the Company's valuable assets to NextEra. Each of the Defendants has breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches. Rather than acting in the best interests of the Company's shareholders, Defendants spent substantial efforts tailoring the Merger Agreement to aggrandize their own interests and needs.

7. Plaintiff seeks injunctive relief to ensure that Defendants cure their

violations of §§14(a) and 20(a) of the 1934 Act, and that Defendants are not permitted to seek stockholder approval of the Proposed Transaction without complying with their duties under the federal securities laws and their fiduciary duties under state law to maximize the value of the Company in a sale and to provide stockholders with all material information about the sales process, the Offer Price, and the Company's value.

## JURISDICTION AND VENUE

8.      The claims herein (as to Counts I and II) arise under §§14(a) and 20(a) of the 1934 Act.  This Court has jurisdiction over the claims asserted herein pursuant to §27 of the 1934 Act and supplemental jurisdiction under 28 U.S.C. §1367.

9.      This Court has jurisdiction over each Defendant because each Defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because one or more of the Defendants, including HEI, either resides or maintains executive offices in the District, and a substantial portion of the transactions and wrongs that are the subject of this complaint occurred in the District.

## PARTIES

11.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of HEI common stock.

12.    Defendant HEI is a Hawaiian corporation that maintains its principal executive offices at 1001 Bishop Street, Suite 2900, Honolulu, Hawaii 96813. The Company's securities trade on the New York Stock Exchange under the symbol "HE." According to Company filings with the SEC, HEI was incorporated in 1981 under the laws of the State of Hawaii and is a holding company with its principal subsidiaries engaged in electric utility and banking businesses operating primarily in the State of Hawaii. HEI's predecessor, Hawaiian Electric, was incorporated under the laws of the Kingdom of Hawaii (now the State of Hawaii) on October 13, 1891. As a result of a 1983 corporate reorganization, Hawaiian Electric became an HEI subsidiary, and common shareholders of Hawaiian Electric became common shareholders of HEI. Hawaiian Electric and its operating utility subsidiaries, Hawaii Electric Light Company, Inc. ("Hawaii Electric Light") and Maui Electric Company, Limited ("Maui Electric"), are regulated electric public utilities. Besides Hawaiian Electric and its subsidiaries, HEI also currently owns directly or indirectly various subsidiaries, including American Savings Holdings, Inc. ("ASHI") (a holding company) and its subsidiary, ASB. According to Company filings with the SEC, ASB, acquired by HEI in 1988, is one of the largest financial institutions in the State

of Hawaii, with assets of $5.2 billion as of December 31, 2013.

13.     Defendant Peggy Y. Fowler ("Fowler") serves as a director of HEI and has served as a director of HEI since 2011. Fowler serves on the Board's Audit Committee, as well as on the Board of Directors of Hawaiian Electric.

14.     Defendant Keith P. Russell ("Russell") serves as a director of HEI and has served as a director of HEI since 2011. Russell serves on the Board's Audit Committee, as well as on the Board of Directors of ASB.

15.     Defendant Barry K. Taniguchi ("Taniguchi") serves as a director of HEI and has served as a director of HEI since 2004. Taniguchi serves as Chair of the Board's Audit Committee and Executive Committee. Taniguchi also serves on the Board of Directors of ASB.

16.     Defendant Constance H. Lau ("Lau") serves as a director of HEI and has served as a director of HEI since 2006 and before that between 2001 and 2004. Lau serves on the Board's Executive Committee. Lau also serves on the Board of Directors of both ASB and Hawaiian Electric, and as HEI's President and Chief Executive Officer.

17.     Defendant A. Maurice Myers ("Myers") serves as a director of HEI and has served as a director of HEI since 1991. Myers serves on the Board's Compensation Committee, as well as on the Board of Directors of ASB.

18.     Defendant James K. Scott ("Scott") serves as a director of HEI and has

served as a director of HEI since 1995.  Scott serves on the Board's Nominating and Corporate Governance Committee, as well as on the Board of Directors of ASB.

19.     Defendant Admiral Thomas B. Fargo ("Fargo") serves as a director of HEI and has served as a director of HEI since 2005.  Fargo serves as Chair of the Board's Compensation Committee and on the Board's Nominating and Corporate Governance Committee, as well as on the Board of Directors of Hawaiian Electric.

20.     Defendant Kevin H. Taketa ("Taketa") serves as a director of HEI and has served as a director of HEI since 1993.  Taketa serves on the Board's Nominating and Corporate Governance Committee, as well as on the Board of Directors of Hawaiian Electric.

21.     Defendant Jeffrey N. Watanabe ("Watanabe") serves as a director of HEI and has served as a director of HEI since 1987.  Watanabe serves as Chairman of the Board and also as Chair of the Board's Executive Committee and on the Board's Compensation Committee.  Watanabe also serves on the Board of Directors of ASB.

22.     The Defendants named above in ¶13 through ¶21 are collectively referred to herein as the "Individual Defendants."

23.     The Individual Defendants, as officers and/or directors of the Company, owe fiduciary duties of loyalty, good faith, due care, and full and fair disclosure to its public stockholders.  As alleged herein, they have breached their

fiduciary duties by, among other things, failing to maximize shareholder value in a proposed sale of the Company.

24. Each of the Individual Defendants at all relevant times had the power to control and direct HEI to engage in the misconduct alleged herein. The Individual Defendants' fiduciary obligations required them to act in the best interests of Plaintiff and all HEI's public stockholders. The Individual Defendants are acting in concert with one another in violating their fiduciary duties as alleged herein, and, specifically, in connection with the Proposed Transaction.

25. The Company's public stockholders must receive the maximum value for their Company shares through the Proposed Transaction. Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are continuing to violate, the fiduciary duties they owe to Plaintiff and the Company's other public stockholders due to the fact that they have engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

26. Defendant NextEra is a Florida corporation headquartered at 700 Universe Boulevard, Juno Beach, Florida 33408. According to NextEra filings with the SEC, NextEra, like HEI, is involved in the distribution of power and energy. NextEra's latest annual proxy claims NextEra is one of the largest electric power companies in North America, with approximately 42,500 MW of generating

capacity in 26 states of the United States and 4 provinces in Canada. The annual proxy further claims that NextEra is the largest generator in North America of renewable energy from the wind and sun and also owns and operates one of the largest fleets of nuclear power stations in the United States, representing approximately 6% of United States' nuclear power electric generating capacity, as of December 31, 2013. NextEra is a publicly traded company with securities that trade on the New York Stock Exchange under the symbol "NEE".

27.     Defendant Merger Sub I is a Delaware corporation established to facilitate the Proposed Transaction and is an affiliate of NextEra.

28.     Defendant Merger Sub II is a Delaware limited liability company established to facilitate the Proposed Transaction and is an affiliate of NextEra.

29.     Collectively, HEI, the Individual Defendants, NextEra, Merger Sub I, and Merger Sub II are referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of HEI stock who are being and will be harmed by Defendants' actions as described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

31.     Plaintiff's claims are properly maintainable as a class action under

Federal Rule of Civil Procedure 23.

32.    The Class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable.  According to recent filings with the SEC, HEI has over 102 million shares outstanding, and is likely held by hundreds, if not thousands, of shareholders scattered throughout the United States.

33.    There are questions of law and fact which are common to the Class and which predominate over any questions affecting any individual members.  The common questions include, *inter alia*, the following:

(a)    Whether the Individual Defendants have and are breaching their fiduciary duties of loyalty and due care with respect to Plaintiff and the Class in connection with the Proposed Transaction;

(b)    Whether the Individual Defendants have and are breaching their fiduciary duties by not securing and obtaining the best price reasonable under the circumstances for the sale of HEI and, instead, will allow the valuable assets of HEI to be acquired by NextEra at an unfair and inadequate price;

(c)    Whether the S-4 contains false and misleading statements and omits material information about the Proposed Transaction necessary for HEI stockholders to be fully informed when deciding whether or not to vote in support of the Proposed Transaction;

(d)    Whether HEI, NextEra, Merger Sub I, and Merger Sub II have

aided and abetted the breaches of the fiduciary and other common law duties owed by the Individual Defendants to Plaintiff and the Class; and

(e)     Whether Plaintiff and the Class will be irreparably harmed if the Proposed Transaction is not enjoined.

34.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the Class, and Plaintiff has the same interest as the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

35.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class. Furthermore, the prosecution of separate actions would possibly establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

36.     Defendants have acted, or refused to act, on grounds generally applicable to the Class with respect to the matters complained of herein, and are causing injury to the Class, thereby making appropriate final injunctive relief sought

herein on behalf of the Class as a whole.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

37.    The Individual Defendants owe HEI and its stockholders fiduciary obligations of good faith, loyalty, and candor, and are required to use their utmost ability to control and manage HEI in a fair, just, honest, and equitable manner.

38.    By virtue of their fiduciary positions, the Individual Defendants are required to:  (a) act in furtherance of the best interests of HEI's stockholders; (b) maximize stockholder value in a sale of the Company; (c) heed the expressed views of HEI's stockholders; and (d) refrain from abusing their positions of control.  To comply with their fiduciary duties, the Individual Directors are prohibited from taking any action that:

(a)    Adversely affects the value provided to the Company's stockholders;

(b)    Will discourage, inhibit, or deter alternative offers to purchase control of the Company or its assets;

(c)    Contractually prohibits themselves from complying with their fiduciary duties;

(d)    Will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the Company's stockholders;

(e)     Will provide them with preferential treatment at the expense of, or separate from, the Company's public stockholders;

(f)     Divides loyalties owed to stockholders;

(g)     Results in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and/or

(h)     Unjustly enriches themselves at the expense of, or to the detriment of, the Company's public stockholders.

39.     Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties and aiding and abetting such breaches owed to Plaintiff and the Class.  The Offer Price is inadequate, and, as a result of the Individual Defendants' self-dealing and divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their HEI common stock in the Proposed Transaction.  Furthermore, Defendants have failed to adequately disclose information about the Proposed Transaction to the Company's stockholders in filings with the SEC.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

40.     Hawaiian Electric has operated for more than 100 years and serves 95% of Hawaii's people.  Despite the persistent economic downturn throughout the

United States, the Company has seen significant operating improvements in the last twelve months. For example, on January 30th, 2014 the Company issued the financial results for ASB for the full-year and fourth quarter 2013. The financial results illustrate the success of ASB's financial strategy, as was well known to the Board, many of whom are members of the ASB Board of Directors. The January 30, 2014 press release stated, in pertinent part, that ASB had "achieved or exceeded 2013 profitability targets" and had achieved "significant continued improvement in asset quality from 2012," and further cited ASB's president, Richard Wacker ("Wacker"), as saying:

> We are pleased that we were able to continue to deliver solid financial results in a challenging regulatory and interest rate environment. Our ongoing focus on enhancing our products, sales and risk management capabilities, combined with the improving economy, produced stronger loan growth and better credit quality than we targeted at the start of the year. That helped us mitigate the challenges of continued low interest rates, as well as the impact of new regulations on fee income and operating costs, said Richard Wacker, president and chief executive officer of American. We head into 2014 with a solid balance sheet, improved asset quality, and more competitive offerings for our customers.

41. Similarly, on May 7, 2014, the Company issued a press release announcing the Company's first quarter 2014 financial results, which included a $12.2 million increase in first quarter net income over the same quarter in 2013, and a dividend payment of $0.31 per share. In the May 7, 2014, press release, Defendant Lau lauded the financial success of the Company and stated, in pertinent part:

We are off to a solid start in 2014 with first quarter financial results aligned with our full year expectations. We're proud of our leadership in the nation's clean energy transformation, including integrating higher percentages of renewable and distributed generation than states across the nation. The policy guidance recently received from the Hawaii Public Utilities Commission will allow us to continue our work with more clarity as we invest in the modernization of our grid to integrate even more low-cost renewable generation in the future.

American Savings Bank continued to deliver solid results despite the ongoing low interest rate and challenging regulatory environment. The bank had annualized loan growth of 3.6% this quarter, while maintaining strong asset quality and financial returns. American's solid results enabled it to pay dividends of $8.75 million to HEI in the quarter while maintaining healthy capital levels.

42.     The Company continued to report significant financial success throughout 2014. On August 11th, 2014, the Company issued a press release announcing its second quarter financial results which included increased net income compared with the same financial quarter in 2013, and in which Defendant Lau was quoted as saying the Company's financial results were in line with internal expectations. Also, on July 30th, 2014, the Company issued second quarter 2014 financial results for ASB in which Wacker noted that ASB achieved "good growth" across its market segments "in both loans and core deposits".

43.     On August 26, 2014, the Company issued a press release announcing that Hawaiian Electric and its subsidiaries Maui Electric and Hawaii Electric Light had proposed plans to address orders issued by the Public Utilities Commission and which included plans to significantly increase distribution of solar energy and

significantly lower electricity bills (the "Hawaii Electric Plan"). The Hawaii Electric Plan was anticipated to be implemented by 2030.

### The Flawed Sales Process Leading Up to the Merger

44. Instead of fulfilling their fiduciary duties, the Board allowed conflicted parties to oversee the merger process. The result was no pre-signing market check, no effort to contact a single potential competing bidder to NextEra, and the hiring of a conflicted financial advisor.

45. The S-4 reveals a long history between NextEra and HEI that began in 2011 through NextEra's involvement in energy projects in Hawaii. Among these projects is the recent signing of a power purchase agreement with HEI for a 15-megawatt solar farm.

46. According to the S-4, the sales process between the two entities was initiated when James L. Robo, Chairman and COO of NextEra, met with Defendant Lau in May 2014 and made a preliminary confidential written proposal valuing HEI in its entirety at $30.00 per HEI share. The proposal stated that NextEra understood that, given Hawaiian law, ASB could not be part of the transaction and that NextEra was developing plans to transfer the bank from under HEI's control.

47. At the annual Board retreat on June 16-18, 2014, Defendant Lau discussed NextEra's preliminary proposal and management committed to provide a detailed analysis of the transaction and would meet with undisclosed financial legal

advisors over the next few weeks to do so.

48.     Then, on July 21, 2014, the Board met again and approved the engagement of J.P. Morgan Securities LLC ("J.P. Morgan") as its financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") as its legal counsel in connection with the preliminary proposal.  The S-4 does not indicate whether the Board considered any other financial advisor beyond J.P. Morgan.  Nor is there any indication of whether the Board deliberated on whether the prior services provided by J.P. Morgan to NextEra, including acting as a bookrunner for NextEra and its subsidiaries, providing asset management services to NextEra, and operating as a lender under certain outstanding credit facilities to NextEra's subsidiaries created debilitating conflicts of interests for the financial advisor.

49.     At the July 21, 2014, meeting, HEI management provided additional analysis concerning HEI's valuation. Additionally, J.P. Morgan, together with the Board and HEI management, discussed benefits and risks of contacting third parties who may be willing to engage in a strategic transaction.  At the conclusion of the meeting, the Board determined that the proposed merger consideration was insufficient but instructed HEI management to communicate to NextEra that it would be willing to enter into a confidentiality agreement if NextEra would consider increasing its proposal.

50.     After further deliberation about possible alternatives for the separation

of ASB, the Board met on August 8, 2011, with Company management and developed a high level term sheet to provide to NextEra.

51. On August 11, 2014, Mr. James A. Ajello, Executive Vice President and Chief Financial Officer of HEI, delivered the term sheet to the CFO of NextEra. The term sheet reiterated the need for NextEra to increase the value of its proposal. The term sheet, among other things, also specified that the operational headquarters of HEI's utility business would remain in Honolulu and expressed the need for NextEra relating to employee job protections. Although negotiation of continued employment terms as a predicate to a successful transaction created a conflict of interest between HEI's senior management and the Board, on one hand, and the Company's shareholders, on the other, the S-4 reveals no effort to isolate conflicted individuals from the negotiation process.

52. In late August 2014, NextEra provided a revised proposal under which NextEra would pay HEI shareholders $24.50 for each share of HEI common stock in cash or stock at HEI's election, with the bank business to be spun off to HEI shareholders. Additionally, NextEra indicated it was willing to absorb up to $130 million of corporate tax liability resulting from the spin-off of ASB.

53. In mid-September, Mr. Ajello advised NextEra's CFO that after internal discussions with HEI's management and directors, and with the understanding that HEI would continue to seek enhanced financial terms, the parties

could move forward with discussions.

54.     Then, on September 5, 2014, the HEI Board met and discussed with J.P. Morgan and Skadden the benefits of contacting third parties.   The Board concluded that the likelihood of securing a superior proposal from a third party was low and thus decided to avoid shopping the Company at all and ensuring exclusive negotiations with NextEra.   The Board further determined to seek enhanced value from NextEra.

55.     On September 11, 2014, NextEra communicated a revised proposal to HEI of $25.00 per share and further agreed to bear the full corporate tax liability resulting from the bank spin-off.

56.     Throughout mid-November, the parties continued to negotiate, and NextEra eventually agreed to pay a special cash dividend of $0.50 per share in addition to the $25.00 per share.

57.     Then, on November 18, 2014, J.P. Morgan updated the Board with respect to its valuation analysis.  Evidencing the lack of independent oversight of the sales process, J.P. Morgan described for the Board's independent directors the process undertaken by management in negotiating the Proposed Transaction and the process undertaken by J.P. Morgan in rendering its fairness opinion.

58.     On December 2, 2014, the parties agreed to embody the proposed merger consideration to HEI shareholders in a fixed exchange ratio of 0.2413 shares

of NextEra stock. The following day, the Board met, received J.P. Morgan's opinion that the Proposed Transaction was fair from a financial perspective, and voted to approve the Proposed Transaction.

59. On the same day, HEI issued a press release announcing the Proposed Transaction and the Merger Agreement between HEI and NextEra and the ASB Hawaii Spin-off. The December 3, 2014, press release stated, in pertinent part:

> **NextEra Energy and Hawaiian Electric Industries to Combine**
>
> **Nation's leading clean energy company to support Hawaii in achieving a more affordable clean energy future**
>
> **Hawaiian Electric Industries shareholders to receive 0.2413 NextEra Energy shares per Hawaiian Electric Industries share and a one-time special cash dividend payment of $0.50 per share**
>
> **Transaction expected to be neutral to earnings per share for NextEra Energy shareholders in first full year post-close; accretive thereafter**
>
> **Hawaiian Electric Company to maintain name and continue to be based in Honolulu**
>
> **No involuntary workforce reductions at Hawaiian Electric Company for at least two years after transaction close**
>
> **Hawaiian Electric Industries to spin off ASB Hawaii to Hawaiian Electric Industries' shareholders**
>
> JUNO BEACH, Fla. and HONOLULU, Dec. 3, 2014 /PRNewswire/ -- NextEra Energy, Inc. (NYSE:NEE) and Hawaiian Electric Industries, Inc. (NYSE:HE) (HEI) today announced a definitive agreement under which the companies have agreed to combine. The transaction, which is valued at approximately $4.3 billion, includes the assumption of $1.7 billion in HEI debt and excludes HEI's banking subsidiary. In connection with the agreement, HEI separately today announced a plan to spin off ASB Hawaii, the

parent company of American Savings Bank (ASB), to HEI shareholders and establish it as an independent publicly traded company. The American Savings Bank spinoff is expected to be tax-free to HEI shareholders and to be completed immediately prior to and contingent upon the combination of NextEra Energy with HEI. As described further herein, the total value to HEI shareholders, excluding assumed debt and including a one-time special cash dividend to HEI shareholders and the current estimated value of American Savings Bank of approximately $8.00[1] per share, is estimated to be $3.5 billion or approximately $33.50 per HEI share.

"Today's announcement marks an important milestone for both our companies as we seek to leverage our respective strengths, commitments to our customers and the communities we serve and the mutual goal of building a cleaner energy future," said Jim Robo, chairman and chief executive officer of NextEra Energy. "We are proud that Hawaiian Electric has agreed to join our company in large part because of our shared vision to bring cleaner, renewable energy to Hawaii, while at the same time helping to reduce energy costs for Hawaiian Electric's customers. Today, Hawaiian Electric is addressing a vast array of complex and interrelated issues associated with the company's clean energy transformation. We believe our strengths are additive to Hawaiian Electric's, creating an opportunity to enhance value for Hawaii's strategically important energy industry. We look forward to welcoming and working with the Hawaiian Electric team, as well as engaging with and listening to key stakeholders, including Hawaiian Electric's customers and communities, to achieve a more affordable clean energy future."

"This is a transformational opportunity to unlock the value of two strong, local companies, American Savings Bank and Hawaiian Electric," said Connie Lau, HEI's president and chief executive officer and chairman of the boards of American Savings and Hawaiian Electric. "In NextEra Energy, Hawaiian Electric is gaining a trusted partner that can help the company accelerate its plans to achieve the clean energy future we all want for Hawaii. NextEra Energy and Hawaiian Electric share a common vision, a more affordable clean energy future for Hawaii. While our goals are among the most ambitious in the nation, including increasing renewables to 65 percent, tripling solar and lowering customer bills 20 percent by 2030, we are

confident that by leveraging both NextEra Energy and Hawaiian Electric's expertise and the additional financial resources that NextEra Energy brings, we can meet these targets even sooner. What's more, HEI's shareholders will realize significant value for their shares by participating in the upside potential of the combined company and the future growth of American Savings Bank, one of Hawaii's leading banks. All in all, we believe this transaction will benefit both our utility and bank customers, our employees, our community, our shareholders and Hawaii."

* * * *

**Transaction Terms**

Subject to the terms and conditions of the merger agreement, upon completion of the transaction, HEI shareholders will receive an estimated total value of approximately $33.50 per share, representing an approximately 21 percent premium to HEI's trailing 20-day volume-weighted average price as of the close on Dec. 2, 2014. The total value will consist of:

- 0.2413 shares of NextEra Energy common stock for each HEI share they own, valued at $25.00 per HEI share, based on NextEra Energy's volume-weighted average stock price for the 20 trading days ended Dec. 2, 2014;

- A one-time special cash dividend, to be paid by HEI, of $0.50 per HEI share for shareholders of record as of the date immediately prior to the closing of the transaction; and

- Shares of ASB Hawaii, through the spinoff transaction, with a current estimated value of $8.00 per share based on consensus analyst estimates.

In addition, NextEra Energy will also assume approximately $1.60 per HEI share of tax liability for the spinoff of ASB Hawaii. This corporate-level tax liability results in additional value over time of up to $1.60 per share to new ASB Hawaii shareholders through an ASB tax basis step-up. With the exception of the one-time special cash dividend, the overall transaction, including the spinoff of ASB Hawaii, is expected to be tax-free to HEI shareholders.

The transaction expands NextEra Energy's regulated holdings and further balances its earnings mix, and is expected to be neutral to earnings per share for NextEra Energy shareholders in the first full year post-close and accretive thereafter. The transaction is expected to have no impact on NextEra Energy's quarterly dividend policy (the most recently declared quarterly dividend was $0.725 per NextEra Energy common share). Additionally, NextEra Energy remains committed to maintaining a strong balance sheet and will fund the transaction in a manner consistent with its current credit ratings.

* * * *

### Planned Spinoff of ASB Hawaii

In connection with the agreement, HEI plans to spin off ASB Hawaii to HEI shareholders and establish it as an independent publicly traded company, immediately prior to and contingent upon the completion of the combination of HEI with NextEra Energy.

Under the planned spinoff, HEI shareholders would receive a distribution of stock in ASB Hawaii, pro rata to their ownership interest in HEI. NextEra Energy will assume the corporate tax liability related to the spinoff (estimated to total approximately $1.60 per HEI share). The spinoff is expected to be tax-free for HEI shareholders. In addition, ASB Hawaii's tax basis in its assets is expected to be increased to reflect their fair market value at the time of the spinoff, which is expected to create a deductible amortization of an intangible asset for tax purposes and a corresponding deferred tax asset (DTA) for generally accepted accounting principles purposes, improving regulatory capital ratios and providing improved cash flow by reducing cash taxes as the DTA is amortized. Based on the median of six equity analyst consensus estimates on Dec. 2, 2014, ASB Hawaii's estimated current value is approximately $800 million, or approximately $8.00 per share. This valuation represents 1.7-1.8x tangible book value for ASB Hawaii. Following the spinoff, American Savings Bank expects to realize higher year-over-year fee income due to regaining its exemption from regulatory limits on interchange fees (Durbin Amendment). Prior to losing the Durbin Amendment exemption in 2013, American Savings Bank realized approximately $6 million, after tax, in higher interchange fees.

60. An overview of the Proposed Transaction is further provided in the illustration below:

## Transaction At A Glance

| | |
|---|---|
| **Transaction Considerations** | • HEI shareholders to receive NextEra Energy common stock, shares in ASB, and a one-time cash dividend<br>• Stock components expected to be tax free to HEI shareholders |
| **Total Value to HEI Shareholders** | • **Total value to HEI shareholders of approximately $33.50 per share representing an approximately 21% premium to HEI's 20-day volume-weighted average price through December 2, 2014**<br>  • $25.00 per share in NextEra Energy common stock, based on a fixed exchange ratio of 0.2413 and NextEra Energy volume-weighted average stock price for the 20 trading days ended Dec. 2, 2014<br>  • $0.50 per share HEI special cash dividend<br>  • $8.00[1] per share current estimated value of ASB<br>• **New ASB shareholders to receive additional value through ASB tax basis step-up (estimated value over time of up to $1.60 per share)** |
| **Structure** | • Hawaiian Electric name to continue and HQ to remain in Honolulu<br>• Hawaiian Electric would become NextEra Energy's third principal business, alongside Florida Power & Light Company and NextEra Energy Resources, LLC<br>• ASB Hawaii to be independent publicly traded company, contingent on closing of NextEra Energy-HEI transaction |
| **Approvals** | • Transaction approvals required include HEI shareholder vote and regulatory approvals / clearances (Hawaii Public Utilities Commission, Federal Energy Regulatory Commission and federal banking regulators, and SEC registration and Hart-Scott-Rodino anti-trust clearances) |
| **Timeframe** | • Expected to close within approximately 12 months |

1) Median of six equity research analyst estimates as of 12/02/2014; excludes benefits of Durbin recapture (see page 27)

NEXTera ENERGY

HEI HAWAIIAN ELECTRIC INDUSTRIES, INC.

7

## <u>The Merger Agreement Favors NextEra</u>

61. Having agreed to the Proposed Transaction, the Defendants then sought to protect the deal with terms in the Merger Agreement designed to prevent another bidder from coming in with superior terms. Despite failing to solicit any alternative bids, the terms of the Merger Agreement substantially favor NextEra to the detriment of Plaintiffs and putative Class, and are calculated to create insurmountable obstacles

and dissuade other potential suitors from making competing offers.

62.     Section 5.03 of the Merger Agreement constitutes a "no solicitation" provision, which improperly bars the Board and any Company personnel from soliciting an alternative offer for the Company, including one that is higher than the Offer Price.  Such a provision prohibits Board members from carrying out their fiduciary duty to maximize value to shareholders in a sale of the Company.  The terms of the no-solicitation provision are also improper because any unsolicited, potentially superior bid must be in writing, which would be highly unlikely given that any potential bidder would lack the due diligence and negotiations necessary to make a serious written offer.  In addition, §5.03 of the Merger Agreement mandates that any superior offer must be subject to the same shareholder approval terms as envisioned by the Merger Agreement (75% approval), which constitutes an improper bar on the ability of the Board to negotiate with alternative bidders.

63.     The Merger Agreement further contains a matching rights provision allowing NextEra an opportunity to match any unsolicited superior offer for the Company, thereby deterring any such offer from being made.

64.     Moreover, §8.02 of the Merger Agreement provides for the Company to pay NextEra a $90,000,000 termination fee, plus certain expenses of up to $5 million in circumstances where the Company accepts an alternative offer.

65.     Finally, §2.05(b) of the Merger Agreement unfairly favors certain

Company insiders over the Company's public shareholders in that holders of certain HEI Restricted Stock Unit Awards ("RSU Awards") are entitled to receive cash for such awards, rather than NextEra stock.

## Conflicts Surrounding the Proposed Transaction

66.     While the Company's public shareholders are receiving inadequate merger consideration, Company management and insiders have secured lucrative benefits from the Proposed Transaction.  The Merger Agreement provides that outstanding HEI equity awards, including those held by executive officers of HEI, generally will be converted into awards denominated in NextEra equity. Additionally, each executive officer at the Company, other than Alan M. Oshima, is party to a change of control agreements with HEI.  Furthermore, the S-4 indicates that certain HEI directors or executive officers may become or may continue to serve as directors of ASB.  All in all, the Board may receive upwards of $27 million in connection with consummation of the Proposed Transaction.

## The Unfair Offer Price

67.     The Proposed Transaction undervalues HEI and is merely an attempt by NextEra to acquire HEI for a bargain price.  The Merger Price does not reflect the strong performance that is expected from the Company in the near future. Notably, the Board felt the NextEra's preliminary proposal of $30 was insufficient. This proposal contemplated that there was a need for a separation of ASB and, thus,

the implied value of the preliminary proposal to HEI shareholders was even greater. Despite this, the Board still agreed to the Fixed Exchange Ratio of $25.00. J.P. Morgan's fairness opinion further demonstrates the inadequacy of the Offer Price.[1] J.P. Morgan's *Discounted Cash Flow Analysis* indicated an implied per share equity value with a range of up to $30.70 for HEI common stock, which is more than $5 above the Fixed Exchange Ratio. Similarly, J.P. Morgan's *Comparable Trading Analyses* and *Comparable Transactions Analysis* each yielded implied equity values above the Fixed Exchange Ratio.

68. Additionally, the timing of the Proposed Transaction has been engineered to cap the trading price of HEI's shares, which rose from $23.67 per share on August 1, 2014 to as high as $28.29 by November 12, 2014. In fact, Yahoo! Finance reports that certain analysts targeted the price of HEI shares at $33.50, meaning the Offer Price provides no premium to the Company's shareholders.

69. It is clear that NextEra recognizes HEI's future prospects and that the combination will result in NextEra achieving an integral component of its business model as illustrated in the chart below:

---

[1]  J.P. Morgan only assesses the fairness of the Fixed Exchange Ratio. Accordingly, its analysis is incomplete.



Hawaiian Electric to be Integral Member of NextEra Energy Family

70.     Although HEI will be integral to NextEra, HEI shareholders will own less than 6.5% of the outstanding shares of NextEra after consummation of the Proposed Transaction.    Accordingly, the Offer Price fails to compensate HEI's shareholders for the change of corporate control, which will occur once HEI is consumed by NextEra, and HEI shareholders will lose the ownership and control of HEI they currently enjoy.

71.     Moreover, HEI's current business plans appear in jeopardy if the Proposed Transaction is consummated, which devalues the little ownership in

NextEra that HEI shareholders will receive. During NextEra's conference call about the Proposed Transaction, NextEra would not commit to continuing the Power Supply Improvement Plan under the terms HEI submitted to the Hawaii Public Utilities Commission in August 2014 and has refused to commit to working to lower utility rates to ratepayers, which HEI has maintained as a goal as it sought to convert to more renewable energy in the future. The Proposed Transaction has also drawn the scrutiny of state lawmakers and has potentially jeopardized the goodwill of the Company. State Representative Chris Lee stated: "It's our job to put people first and make sure they can save money and install solar and get off the grid if they want to. We can't have a company try to come in and hold them down and tie them to the grid."

## The S-4 Contains Numerous Material Omissions

72. The Individual Defendants are required to provide all material information concerning the Proposed Transaction to HEI's shareholders in order to permit the Company's shareholders to make an informed decision as to whether or not to vote in favor of the Proposed Transaction.

73. On January 8, 2014, NextEra filed the S-4 with the SEC. As set forth in detail below, the S-4 omits material information about the Proposed Transaction that must be disclosed to HEI's shareholders to enable them to make a fully informed decision on whether to vote in favor of the Proposed Transaction. This omitted

information, if disclosed, would significantly alter the total mix of material information available to HEI's shareholders.

### *Process Related Disclosures*

74.     The S-4 omits material information with respect to the process and events leading up to the execution of the Merger Agreement.  The disclosure omissions include, but are not limited to, failure to disclose:

(a)     The business relationship between HEI and NextEra prior to entry of the Proposed Transaction;

(b)     Which financial advisors HEI's management met with after the Board's annual retreat;

(c)     NextEra's valuation of HEI (including both Hawaiian Electric and ASB) in the preliminary proposal);

(d)     The date of NextEra's bid of $30 per HEI share;

(e)     The closing price of HEI shares on the trading day preceding NextEra's bid, or the closing prices of the shares preceding each subsequent offer and counteroffer;

(f)     The additional analysis management provided to the Board concerning HEI's valuation during its July 21, 2014 meeting;

(g)     The number of potential acquirers that J.P. Morgan indicated could be interested in strategic transaction with the Company;

(h)     Whether the Board considered any financial advisor other than J.P. Morgan to assist with the Proposed Transaction;

(i)     Whether the high level term sheet provided to NextEra on August 11, 2014 specified particular employees or directors whose job protections needed to be maintained;

(j)     The full expected corporate tax liability resulting from the ASB Spin-off;

(k)     Why the ASB Spin-off could not be performed as a tax-free reorganization (given that a spin-off is normally a tax-free reorganization), thereby avoiding corporate tax liability;

(l)     The HEI Board's basis for the assessment that the risk of leaks arising from a broader sales process was high and that any such leaks would likely have a negative effect on the potential transaction with NextEra, as well as negative effects on HEI's utility business and bank business, particularly in light of HEI's unique circumstances in the Hawaii community and regulated nature of its business; and

(m) Who in HEI's management led the negotiations with NextEra.

### J.P. Morgan Related Omissions from the S-4

75.     The S-4 further omits material information with respect to financial matters disclosed in the S-4, including the analysis conducted by HEI's financial

advisor, J.P. Morgan. The omissions include:

**Discounted Cash Flow Analysis:**

(a)     Adequately defining "unlevered free cash flows."  Importantly, it is unclear if EBITDA and unlevered free cash flows are the same;

(b)     Disclosing the basis for the assertion that the terminal growth rate range of 1.15% to 1.65% is the "norm" in the utility industry for ongoing, steady state business;

(c)     Identifying, quantifying, and providing the source for J.P. Morgan's weighted average cost of capital;

**Comparable Trading Analysis:**

(d)     Disclosing the objective selection criteria and failing to adequately disclose the observed company-by-company financial metrics examined by J.P. Morgan in conducting the Comparable Trading Analysis;

(e)     Disclosing why the after-tax overhead adjustment used to calculate EPS (CY15: $19 million; CY16: $20 million) is larger than the pre-tax overhead adjustment used to calculate the EBITDA (CY15: $15 million; CY16: $16 million);

(f)     Disclosing the EBITDA utilized for this analysis;

**Comparable Transaction Analysis**

(g)     Disclosing the objective selection criteria in addition to adequately disclosing the observed company-by-company financial metrics examined by J.P. Morgan in conducting the Comparable Trading Analysis;

(h)     Indicating that the $19 million corporate overhead adjustment is in the aggregate, and fails to the disclose the adjustment on a per-share basis;

**Projections**

(i)     Disclosing the assumptions and financial implications of the ASB Spin-off, including quantitative detail as necessary;

(j)     Disclosing the following details on the table detailing the summary of financial forecasts for HEI's utility business: (i) Reconciliation of GAAP net income to non-GAAP unlevered free cash flows and non-GAAP EBITDA; (ii) EPS; and (iii) Synergies; and

(k)     Disclosing financial forecasts for NextEra.

***Miscellaneous***

76.     Additionally, the S-4 fails to disclose the following items:

(a)     the details on the fees paid to J.P. Morgan by the buyer and seller, respectively, for the services rendered with respect to the merger;

(b)     the amount of compensation J.P. Morgan received for prior services it has performed for HEI or NextEra;

(c) whether J.P. Morgan assessed the possible spin-off of ASB without a sale of the remaining assets and operations to NextEra;

(d) the details and conclusions regarding J.P. Morgan's review of other potential strategic alternatives for HEI;

(e) a valuation summary of HEI which details the calculation of fully diluted shares, equity value (at the unaffected price and the offer price), and enterprise value (at the unaffected price and the offer price); and

(f) pro-forma financial projections of the ASB spin-off.

77. Unless enjoined by this Court, Defendants will continue to breach and/or aid the breaches of fiduciary duties the Individual Defendants owe to Plaintiff and the Class, and may consummate the Proposed Transaction to the irreparable harm of the Class.

78. Plaintiff and the other members of the Class have no adequate remedy at law.

## COUNT I

### Individual Claim for Violations of §14(a) of the 1934 Act
### (Against the Individual Defendants and HEI)

79. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80. Rule 14a-9, promulgated by the SEC pursuant to §14(a) of the 1934 Act, provides, in relevant part: "No solicitation subject to this regulation shall be

made by means of any proxy statement . . . containing any statement which . . . is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."

81.     As discussed above, HEI filed and delivered the Proxy Statement contained in the S-4 to HEI's stockholders, which the Individual Defendants knew, or recklessly disregarded, that contained numerous material omissions and misstatements.

82.     The S-4 and the Proxy Statement contained within was prepared and disseminated by HEI and NextEra and reviewed by the Individual Defendants.  The S-4 misrepresented and/or omitted material facts, including material information about the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company.

83.     In doing so, the Individual Defendants misrepresented and omitted material facts necessary to make the statements contained in the S-4 not misleading, in violation of §14(a) of the 1934 Act.  By virtue of their positions within the Company and/or roles in the process and in the review and dissemination of the S-4, the Individual Defendants were aware of this information and their duty to disclose this information in the S-4.

84.     The omissions and false and misleading statements in the S-4 are

material in that a reasonable stockholder would consider them important in deciding whether to vote their shares or seek appraisal. In addition, a reasonable investor would view full and accurate disclosure as significantly altering the total mix of information made available in the S-4 and in other information reasonably available to stockholders.

85. By reason of the foregoing, the Individual Defendants, HEI, and NextEra have violated §14(a) of the 1934 Act.

## COUNT II

**Individual Claim for Violations of §20(a) of the 1934 Act**
**(Against the Individual Defendants)**

86. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

87. The Individual Defendants acted as controlling persons of HEI within the meaning of §20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers, directors, controlling stockholders, advisors of HEI, and/or their participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

88. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

89. In particular, each of the Individual Defendants had direct and/or supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of this document.

90. The Individual Defendants had direct supervisory control over the composition of the S-4 and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the S-4.

91. In addition, as the S-4 sets forth at length, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The S-4 purports to describe the various issues and information that they reviewed and considered.

92. By virtue of the foregoing, Defendants have violated §20(a) of the 1934 Act.

93.     As set forth above, Defendants had the ability to exercise control over, and did exercise control over, a person or persons who have each violated §14(a) of the 1934 Act and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to §20(a) of the 1934 Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT III

### Class Claim for Breaches of Fiduciary Duties
### (Against the Individual Defendants)

94.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

95.     The Individual Defendants have violated their fiduciary duties owed to Plaintiff and the Class.  By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants are attempting to unfairly deprive Plaintiff and the Class of the value of their investment in HEI.

96.     As demonstrated by the above allegations, the Individual Defendants have failed to exercise the necessary care required and have therefore breached their duty of loyalty because, *inter alia*:

(a)     They have failed to properly value the Company;

(b)     They have failed to take steps to maximize the value of HEI for its public stockholders; and

(c)  They reviewed and have allowed the filing of the misleading and incomplete S-4 designed to mislead Company stockholders as to the process leading up to the Proposed Transaction and the value of HEI.

97.  Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class and may consummate the Proposed Transaction, which will deprive the Class of its fair and proportionate share of HEI's valuable assets and businesses, to the irreparable harm of the Class.

98.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that the Individual Defendants' actions threaten to inflict.

## COUNT IV

**Class Claim for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duties
(Against HEI, NextEra, Merger Sub I, and Merger Sub II)**

99.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

100.  HEI, NextEra, Merger Sub I, and Merger Sub II, by reason of their status as parties to the Merger Agreement and/or their possession of non-public

information, have aided and abetted the Individual Defendants in the aforesaid breaches of their fiduciary duties.

101. Such breaches of fiduciary duties could not, and would not, have occurred but for the conduct of HEI, NextEra, Merger Sub I, and Merger Sub II who, therefore, have aided and abetted such breaches in the possible sale of HEI to NextEra.

102. As a result of the unlawful actions of HEI, NextEra, Merger Sub I, and Merger Sub II, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive fair value for HEI's assets and business. Unless the actions of HEI, NextEra, Merger Sub I, and Merger Sub II are enjoined, they will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to Plaintiff and the Class.

103. Plaintiff and the Class have no adequate remedy at law.

## DEMAND FOR TRIAL BY JURY

104. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues that may be so tried.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in Plaintiff's favor and in favor of the Class and against Defendants, as follows:

A.  Declaring that this action is properly maintainable as a class action and

designating Plaintiff as Class representative;

B.      Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until they comply with all fiduciary duties to maximize stockholder value and fully disclose all material information in their possession and duties under §§14(a) and 20(a) of the 1934 Act to provide stockholders with all material information relating to the unfair sales process, the conflicts of interest suffered by Defendants in connection with the Proposed Transaction, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company;

C.      Imposing a constructive trust, in favor of Plaintiff, upon any benefits improperly received by Defendants as a result of their wrongful conduct;

D.      Directing Defendants to account to Plaintiff and the Class for all damages suffered by them as a result of Defendants' wrongful conduct alleged herein;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

Dated:  January 27, 2015                    **FOSTER LAW OFFICES LLLC**

                                             /s/ Jeffrey Foster
                                            _____

Jeffrey Foster #9857
PO Box 127
Captain Cook, HI  96704
Telephone:  (808) 348-7800
Facsimile:  (808) 443-0277

Joseph P. Guglielmo
Joseph D. Cohen
**SCOTT+SCOTT,    ATTORNEYS    AT
LAW, LLP**
 The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY  10174
Telephone:  (212) 223-6444
Facsimile:   (212) 223-6334
jguglielmo@scott-scott.com
jcohen@scott-scott.com

Lionel Z. Glancy
Louis Boyarsky
Philip Gutierrez
**GLANCY BINKOW & GOLDBERG
LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310)201-9160
lglancy@glancylaw.com
lboyarsky@glancylaw.com
pgutierrez@glancylaw.com

E. Kirk Wood
**WOOD LAW FIRM, LLC**
P. 0. Box 382434
Birmingham, Alabama 35238-2434
Telephone: (205) 908-4906
Facsimile: (866) 747-3905
ekirkwood1@bellsouth.net